UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


SHAWN ASA ASHBY,

      Plaintiff,

v.                         Civil Action No: 2:14-674

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

      Defendant.


MEMORANDUM OPINION & ORDER


      The plaintiff, Shawn Asa Ashby, instituted this action under 42 U.S.C. § 405(g) on January 8, 2014, seeking judicial review of the Commissioner's final decision denying his application for disability insurance benefits and supplemental security income.  Ashby and the Commissioner have each moved for judgment on the pleadings.  By standing order this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, who filed his Proposed Findings and Recommendation ("PF&R") on February 27, 2015.  The PF&R recommends that the court deny Ashby's motion, grant the Commissioner's motion, affirm the Commissioner's decision, and dismiss this case.

Ashby filed objections to two aspects of the PF&R on March 23, 2015, each of which the court will assess under a de novo standard.  28 U.S.C. § 636(b)(1)(C).

## I. Background[1]

Ashby was born in 1976 and completed his General Equivalency Diploma.  He previously worked as an auto mechanic and boilermaker for several years, but stopped when he found it too painful to continue in those trades.  He later undertook some light work at a mechanic's garage, including stocking small parts and manning the register, but reports that he often left after a few hours due to pain.

On September 29, 2010, Ashby filed an application for disability insurance benefits and supplemental security income, alleging that he had been disabled since September 12, 2010. The Social Security Administration denied his claim initially and upon reconsideration.  Ashby requested and received a hearing before an Administrative Law Judge ("ALJ"), which hearing was held on August 27, 2012.

Following the hearing, the ALJ issued a decision denying Ashby's application for benefits on September 13, 2012.

---

[1] The plaintiff's background, his relevant medical history, and the procedural history of his claim are all thoroughly described in the PF&R, and only briefly summarized here.

Applying the sequential, five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found: (1) that Ashby had not engaged in substantial gainful activity since his alleged onset date; (2) that Ashby suffered from four severe impairments -- "chronic cervical and lumbar sprain, degenerative arthritis, carpal tunnel syndrome with history of right release, and obesity" -- but that Ashby's mental impairments -- "major depressive disorder and pain disorder associated with both psychological factors and a general medical condition" -- considered singly and in combination were not severe because they placed only minimal limits on Ashby's ability to perform basic mental work activities; (3) that Ashby's four severe impairments did not meet or medically equal the criteria of any listed impairment; (4) that Ashby did not have the residual functional capacity ("RFC") to return to his "past relevant work"; but (5) that Ashby retained the RFC necessary to perform sedentary work, except that he could not push or pull with his upper extremities, and therefore was capable of performing other jobs available in the local economy such as "order clerk," "surveillance system monitor," or "cashier."  On that basis the ALJ concluded that Ashby was not disabled within the meaning of §§ 216(i) and 223(d).  His decision became the final decision of the Commissioner on November 14, 2013, when the Appeals Council denied Ashby's request for a review.

Ashby objects to two aspects of the ALJ's decision and the magistrate judge's recommendation to affirm it.  First, Ashby asserts that the ALJ's RFC determination was flawed because the ALJ failed to conduct a "function-by-function" analysis of Ashby's limitations.  See Plaintiff's Objections to Proposed Findings and Recommendation ("Objections") at 2-3.  Second, Ashby claims that the ALJ's conclusion that his mental impairments were not severe is not supported by substantial evidence in the record.  Id. at 3-4.

## II. Standard of Review

The court must determine whether the ALJ's decision is based upon an appropriate application of the law and is supported by substantial evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  It "consists of more than a mere scintilla of evidence but may be less than a preponderance."  Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).  "In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

4

"Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ.]"  Id. (internal quotation marks and citations omitted).

### III. Discussion

#### A. RFC Determination

Ashby first argues that the ALJ erred by failing to undertake a "function-by-function" analysis of his limitations before making his RFC determination, as required by Social Security Ruling 96-8p (the "Ruling"), 61 Fed. Reg. 34,474 (July 2, 1996).

#### 1.

In a very recent case -- decided after the ALJ reached his decision and after the magistrate judge submitted his PF&R -- the Fourth Circuit addressed the ALJ's obligation to undertake a function-by-function analysis.  See Mascio v. Colvin, ---F.3d---, 2015 WL 1219530 (4th Cir. March 18, 2015).  As our court of appeals observed, "Social Security Ruling 96-8p[] explains how adjudicators should assess residual functional capacity.  The Ruling instructs that the residual functional capacity assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related

5

abilities on a function-by-function basis, including the
functions listed [at 20 C.F.R. §§ 404.1545(b)-(d) and
416.945(b)-(d)]." Mascio, 2015 WL 1219530 at *2 (internal
quotation marks and citations omitted).  Those functions
"include physical abilities such as sitting, standing, walking,
lifting, carrying, pushing, and pulling; mental abilities such
as understanding, remembering, carrying out instructions, and
responding appropriately to supervision; and other abilities
such as seeing, hearing, and the ability to tolerate
environmental factors." Cichocki v. Astrue, 729 F.3d 172, 176
(2d Cir. 2013) (citing 20 C.F.R. §§ 404.1545, 416.945).

     According to the Ruling, it is only after that
function-by-function analysis has been completed that RFC may
"'be expressed in terms of the exertional levels of work,
sedentary, light, medium, heavy, and very heavy.'" Mascio, 2015
WL 1219530, at *2 (quoting SSR 96-8p, 61 Fed. Reg. at 34, 475).
And the Ruling "further explains that the residual functional
capacity assessment must include a narrative discussion
describing how the evidence supports each conclusion, citing
specific medical facts (e.g., laboratory findings) and
nonmedical evidence (e.g., daily activities, observations)."
Mascio, 2015 WL 1219530 at *2 (internal quotation marks and
citations omitted).

6

But our court of appeals went on to explain that "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis . . . . is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. at *3 (quoting Cichocki, 729 F.3d at 177).  Instead, the court "agree[d] with the Second Circuit that '[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'"  Id. (quoting Cichocki, 729 F.3d at 177).

Applying that standard, the court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions[.]"  Id. at *4.  In particular, the court observed that "the ALJ concluded that Mascio [could] perform certain functions [but] said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point, and also concluded that Mascio could lift only 20 pounds without explaining his rationale for rejecting a conflicting finding that Mascio could lift 50 pounds.  Id. at *3.

7

Here, the ALJ's findings with regard to RFC begin with the pronouncement that, based on "careful consideration of the entire record, . . . [Ashby] has the residual functional capacity to perform sedentary work . . . except that he cannot push or pull with the upper extremities."  Administrative Record ("R.") at 15.  There is no explicit function-by-function analysis.  But that alone, as the Fourth Circuit explained in Mascio, is not enough to require remand.  Instead, the court must assess whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record.

2.

Ashby argues that the RFC determination in this case was flawed because the ALJ failed to "specify which of Ashby's physical functions were restricted beyond the inability to push/pull with the upper extremities," did not account for limitations on "Ashby's postural, manipulative, and environmental activities, or in his ability to sit, stand, or walk," and "did not address whether Ashby could perform [those] work functions for a full day."  Objections at 3.  Ashby does not appear to challenge the ALJ's consideration of his mental

abilities in formulating the RFC.[2]  A careful review of the ALJ's decision reveals that he did consider Ashby's relevant physical functions, but found that Ashby's description of the extent of his limitations was not credible.

The ALJ acknowledged that, in reviewing the plaintiff's symptoms, he was required to (1) assess whether a physical or mental impairment "could reasonably be expected to produce the claimant's pain or other symptoms," and then (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit[ed Ashby's] functioning." R. at 16.  The ALJ related Ashby's symptoms as including "knee and back problems" and "constant back pain" that, according to Ashby, left him unable to stand more than ten minutes or sit more than thirty minutes. Id.  He also noted that Ashby "had right carpal tunnel surgery," and that Ashby reported being "unable to grip" and needing to

---

[2] Ashby does challenge the ALJ's step-two determination that his mental impairments were not severe, and that argument is addressed below.  But Ashby's objection to the RFC determination focuses on the ALJ's alleged failure to consider the physical abilities set forth above.  Compare Objections at 3-4 (arguing that the determination of non-severity was "particularly inappropriate at step two" and asserting that the "ALJ erred in finding that Plaintiff's mental impairments were not severe impairments at step two."), with id. at 3 ("There was no discussion and no restrictions in the RFC to account for Ashby's postural, manipulative, and environmental activities, or in his ability to sit, stand, or work due to the enumerated severe impairments.").

"switch hands when driving." <u>Id.</u>  From this it appears that the ALJ considered Ashby's symptoms to include back and knee pain and some diminution in hand strength.

The ALJ conceded that Ashby's "medically determinable impairments" -- presumably he meant Ashby's chronic cervical and lumbar sprain, degenerative arthritis, carpal tunnel syndrome with history of right release, and obesity -- "could reasonably be expected to cause the alleged symptoms[.]" But the ALJ then concluded that Ashby's "statements concerning the intensity, persistence and limiting effects of th[ose] symptoms [were] not credible to the extent . . . inconsistent with the above residual functional capacity assessment."[3]  <u>Id.</u>  In other words, it appears the ALJ believed that Ashby was experiencing back pain, knee pain, and some loss of hand strength as a result of

---

[3] The <u>Mascio</u> court rightly pointed out that this boilerplate language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'"  <u>Mascio</u>, 2015 WL 1219530 at *5 (quoting <u>Bjornson v. Astrue</u>, 671 F.3d 640, 645 (7th Cir. 2012). But the error, attributable to a "template drafted by the Social Security Administration for insertion into any administrative law judge's opinion to which it pertains," is harmless if the ALJ "properly analyze[s] credibility elsewhere" by measuring the claimant's "alleged functional limitations from pain to the other evidence in the record," rather than the preordained RFC. <u>See Mascio</u>, 2015 WL 1219530 at *5 n.9 (explaining the origin of the boilerplate language (internal quotation marks and citation omitted)) and *5-6 (discussing harmless error).  As we'll see, the ALJ in this case gave specific evidence-based reasons for doubting Ashby's credibility and discounting Ashby's statements regarding the limiting effect of his pain.

one or more medically determinable impairments, but did not
credit Ashby's assertions that he was "unable to grip" and only
able to stand for ten minutes and sit for thirty minutes.

The ALJ's decision includes a substantive discussion
of his rationale.  First, the ALJ observed that a consultative
medical examination performed in December of 2010 confirmed
Ashby's back and knee pain, but revealed that Ashby could "stand
on one leg with no difficulty," "ambulated with a normal gait,"
had normal, bilateral grip strength, and "was able to write and
pick[]up coins with either hand without difficulty."  R. at 16-
17.  Second, medical records from March of 2011 showed that
Ashby reported "exercis[ing] regularly," examination of Ashby's
back showed "no abnormalities," and X rays of his wrists showed
"no arthritic changes, fracture or dislocation[.]"  R. at 17.
Third, treatment notes from April of 2011 indicated that Ashby
had full strength in his upper extremities, "grip strength of
4/5 bilaterally," "lower extremity strength [of] 5/5
bilaterally," and Ashby's "gait and stance were normal."  Id.
Fourth, despite presenting at the Emergency Room with "severe
back pain" in June of 2011, X rays showed that Ashby had a
normal lumbar spine and only "mild degenerative changes" to the
right knee, a "normal range of motion of the upper extremities,"
and "bilateral lower extremity strength was 5/5."  R. at 17-18.

Fifth, the ALJ acknowledged that Ashby received injections in his knees regularly in 2011 and 2012 and that an MRI of Ashby's right knee conducted in October of 2011 showed evidence of osteoarthritis and a tear of the anterior cruciate ligament; the ALJ also acknowledged that Ashby underwent a reportedly successful "carpal tunnel release" surgery on his right wrist in 2011, and that X rays of Ashby's hands showed "mild/moderate spurring of the first [carpometacarpal (i.e., thumb)] joint." R. at 18.

Viewing this evidence in the aggregate, the ALJ concluded that the record did "not support the claimant's allegations of such restricted ability to stand, walk, and sit," or his allegations "of such restricted grip." R. at 19.  On the other hand, he conceded that Ashby did have "some objective findings related to degenerative arthritis, particularly in the knees[.]"  Id.  In fact, the ALJ gave Ashby the "benefit of [the] doubt" regarding his knee pain, and assigned "little weight to [] State agency opinions" that Ashby could "perform light exertion with no climbing of ladders, ropes, or scaffolds[, and] could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl," instead choosing to limit Ashby to "sedentary exertion". R. at 21.  It also appears -- although it is less clear -- that the ALJ attempted to

account for Ashby's loss of grip strength (to whatever degree it existed) by limiting him to work that did not involve pushing or pulling with the upper extremities.

The Fourth Circuit has instructed district courts that "factual findings [that] rest upon credibility determinations" made by the ALJ "should be accepted . . . absent 'exceptional circumstances'" not present here. Edelco, Inc. v. N.L.R.B., 132 F.3d 1007, 1011 (4th Cir. 1997); Bishop v. Comm'r of Social Sec., 583 F. App'x 65, 68 (4th Cir. 2014). Accordingly, and in light of the extensive review of the medical evidence in the record, it was not improper for the ALJ to reject Ashby's characterization of his grip strength or his assertion that he could not stand longer than ten minutes or sit longer than thirty minutes.

Nevertheless, the Objections note that "the ALJ did not address whether Ashby could perform those work functions" -- that is, sitting, standing, and gripping -- "for a full work day." Objections at 3. That issue is relevant because the Ruling requires the RFC determination to include an assessment of the claimant's "ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which is defined to mean "8 hours a day, for 5 days a week, or an equivalent work schedule." See SSR 96-8p, 61 Fed. Reg. at 34,

475-76.

A "sedentary job is one which involves sitting, [but] a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). In his decision, the ALJ never explicitly found that Ashby was capable of sitting, and occasionally walking and standing, for eight hours a day, five days a week. It's tempting to assume that he did, given his decision that Ashby was capable of performing sedentary work, but that kind of circular reasoning is precisely what the Ruling seems designed to prevent:

> At step 5 of the sequential evaluation process, RFC must be expressed in terms of . . . the exertional categories[.] . . . However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

61 Fed. Reg. at 34,476.

Once again, however, the text of the ALJ's decision makes clear that he undertook the proper analysis. During the hearing, Ashby's representative asked the vocational expert whether sedentary work was available for a person who, "due to a combination of pain in various parts of his body[, . . .]

14

wouldn't be able to complete a normal eight-hour workday at least once a week[.]"  R. at 45.  The vocational expert replied that "[i]f that were on a continual basis [she] would not be able to list substantial gainful activity for such a person."  Id.  The ALJ specifically noted that modified hypothetical in his decision, but concluded that "the evidence does not support such a limitation."  R. at 22.  That conclusion is supported by substantial evidence.  Indeed, after discussing the medical evidence set forth above, the ALJ specifically opined that the evidence did "not support [Ashby's] allegations" concerning his "ability to stand, walk, and sit."  R. at 19.  As earlier noted, the ALJ also referenced a State consultative report that found Ashby capable of light, rather than sedentary, work, including occasional climbing of stairs and ramps, stooping, kneeling, crouching, and crawling.  R. at 21.  Although the ALJ ultimately assigned that opinion "little weight," he did not accord it "no weight."  Moreover, the ALJ observed that Ashby reported in March of 2011 that, due to his inability to sleep, he had been "going hunting from dusk until about 2 a.m." and that Ashby also reported in April of 2011 that he had been exercising regularly, as much as three times per week.  R. at 20.  Finally, although not specifically discussed by the ALJ, Ashby's wife reported on July 18, 2011, that Ashby had been "standing at the hospital all day due to his father's illness."  R. at 305.

15

Ashby reported on December 2, 2011, that he continued to work as a mechanic and that his knee and low back pain persisted but were manageable, R. at 401, but there is also some evidence in the record that tends to indicate Ashby might not be able to perform sedentary work for eight hours a day, five days a week.  Specifically, a letter from Ashby's former employer, J&S Auto Supply, stated that, between January and June of 2012, Ashby was scheduled to engage in fifteen-to-twenty hours a week of "[l]ight duty work" consisting of "putting away light parts, checking in the orders, filing papers, waiting on customers," but "after about three to four hours he would have to leave" "because his back and knees would get to hurting bad."  R. at 244.  That letter is not mentioned in the ALJ's decision,[4] but its contents are duplicative of Ashby's own testimony regarding his limitations, which the ALJ specifically found "not fully credible."  See R. at 39 ("She tried to schedule anywhere approximately 15, 18 hours a week, but a lot of times if I made it two to three hours a day, then that was about it."), 16 ("The objective findings do not support the limitations alleged by the

---

[4] That the letter constitutes layperson evidence is not a sufficient reason to reject it.  See, e.g., 20 C.F.R. §§ 404.1513(d), 416.913(d) ("In addition to evidence from . . . acceptable medical sources . . ., we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."); see also  SSR 96-8p, 61 Fed. Reg. at 34477 ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [l]ay evidence[.]").

claimant and reveal he is not fully credible regarding the severity of his complaints."). As a result, the ALJ's failure to discuss the letter does not undermine his ultimate determination that Ashby's description of his limitations was less than credible and inconsistent with the record evidence. See Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) ("Books's brother Roland's testimony did not constitute a separate 'line of evidence.' Rather, it served strictly to reiterate, and thereby corroborate, Books's own testimony concerning his activities and limitations. To the extent [the ALJ] found Books's testimony concerning his disabling pain and physical limitations to be untenable when contrasted with his reported daily activities and the relevant medical evidence, he necessarily found Roland Books's supporting testimony similarly not credible.").

In sum, the ALJ considered Ashby's descriptions of his functional limitations, but ultimately found them inconsistent with substantial evidence in the record, including medical reports and Ashby's own reports of his activities. And although the ALJ did not have the benefit of the Fourth Circuit's guidance in Mascio, his written decision makes clear that he considered the extent of Ashby's ability to stand, sit, and use his hands before concluding that Ashby could perform sedentary

17

work.  Accordingly, the ALJ adequately considered Ashby's "physical functions," Objections at 3, in arriving at his RFC determination; Ashby's objection is without merit.

### B. Mental Impairments

Ashby also objects to the ALJ's determination, at step two of the sequential analysis, that his mental impairments were not "severe."

The severity of mental impairments is evaluated under the framework established by 20 C.F.R. §§ 404.1520a and 416.920a.  First, "pertinent symptoms, signs, and laboratory findings" are evaluated to "determine whether [the claimant has] a medically determinable impairment(s)."  20 C.FR. §§ 404.1520a(b)(1) and 416.920a(b)(1).  If a medically determinable mental impairment is established, the ALJ must then "rate the degree of functional limitation resulting from the impairment" by examining the extent to which the impairment interferes with the claimant's "ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. §§ 404.1520a(b)(2), (c)(2) and 416.920a(b)(2), (c)(2). In doing so, the ALJ considers whether the claimant's "activities of daily living[,] social functioning[,] and concentration, persistence, or pace" are mildly, moderately, markedly, or extremely limited, or not limited at all.  20

C.F.R. §§ 404.1520a(c)(3), (4) and 416.920a(c)(3), (4).  The ALJ
must also determine whether the claimant has suffered any
episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3), (4)
and 416.920a(c)(3), (4).  "A rating of 'none' or 'mild' in the
first three areas" -- that is, activities of daily living;
social functioning; and concentration, persistence, or pace --
"and a rating of 'none' in the [category of episodes of
decompensation] will generally lead to a conclusion that the
mental impairment is not 'severe,' unless the evidence indicates
otherwise."  White v. Astrue, 637 F. Supp. 2d 363, 368 (S.D. W.
Va. 2009) (quoting 20 C.F.R. §§ 404.1520a(d)(1) and
416.920a(d)(1)).

        Here, the ALJ noted that a consultative psychological
evaluation conducted in January of 2011 indicated that Ashby had
the medically determinable impairments of major depressive order
and "pain disorder associated with psychological factors and a
general medical condition."  R. at 14.  But he then concluded,
based on Ashby's reports of his daily activities and a
consultative psychological evaluation conducted on January 6,
2011 by Paul A. Dunn, Ph.D., that Ashby had suffered no episodes
of decompensation and had no more than a "mild limitation" in
the first three functional areas (daily living; social
functioning; and concentration, persistence, and pace).  As a

result, in keeping with the framework discussed above, the ALJ found that Ashby's mental impairments were not severe.

Ashby argues this was error inasmuch as the medical evidence in the record indicates that his functional limitations were more than mild.  The evidence to which he refers consists of Dr. Dunn's clinical interview and mental status examination; a psychiatric review technique and mental RFC assessment conducted by Rosemary L. Smith, Psy.D., on January 14, 2011; and an affirmation of Dr. Smith's opinion submitted on April 1, 2011 by James W. Bartee, Ph.D.

Dr. Dunn's report states that Ashby "arrived 25 minutes early for his appointment, having driven himself to the office location, with no difficulty finding it." R. at 261. Despite that observation, Dr. Dunn noted that Ashby presented with "significant signs and symptoms of depression, including moderate levels of sadness[.]"  R. at 263.  Dr. Dunn also indicated that, after arriving for his appointment, Ashby appeared "not well oriented[,] . . . did not know [Dunn's] name or the location of the evaluation, and [] thought it was September 2011" (rather than January).  R. at 264.  He rated Ashby's recent and remote memory as moderately deficient.  R. at 264-5.  On the other hand, Dr. Dunn observed "no significant signs or symptoms of thought disorder," and opined that Ashby's

concentration, immediate memory, and persistence were "[w]ithin normal limits," and that his pace and social functioning were only "mildly deficient."  Id.  He reported that Ashby's GAF score was 65, which correlates with "[m]ild symptoms."  R. at 266.  Ultimately, Dr. Dunn indicated that Ashby "has depression as his most prominent disorder, and it is at a moderate level, but it does not seem to have a significant effect on his functioning but rather the pain condition, by [Ashby's] report, seems to have more of an effect."  R. at 266.

Dr. Smith's psychiatric review technique characterized Ashby's limitations somewhat differently.  She opined that Ashby could be expected to have mild restrictions on his activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace.  R. at 279.  In her mental RFC assessment, she also concluded that Ashby's ability to understand and remember detailed instructions, his ability to carry out detailed instructions, his ability to maintain attention and concentration for extended periods, his ability to interact appropriately with the general public, and his ability to accept instructions and respond appropriately to criticism from supervisors were all moderately impaired.  R. at 284-85.  Nevertheless, she concluded that Ashby "retain[ed] the ability

21

to learn and perform simple, unskilled work-like activities in
an environment that involves limited contact with others." R.
at 286. Thereafter, on April 1, 2011, Dr. Bartee reviewed Dr.
Smith's assessment and "affirmed [it] as written," having found
it "consistent with the available MER," by which he presumably
meant medical evidence of record. R. at 288.

The ALJ did not mention Dr. Smith's report at step two
of the sequential review, though he did later. That omission is
notable. If the ALJ credited Dr. Smith's conclusion that
Ashby's ability to maintain social functioning, and
concentration, persistence, or pace were all moderately limited
(as opposed to Dr. Dunn's conclusion that those functions were
only mildly limited), the default conclusion that Ashby's mental
impairments were not severe would not have been applicable. See
20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your
limitation in the first three functional areas as 'none' or
'mild' and 'none' in the fourth area, we will generally conclude
that your impairment(s) is not severe[.]").

But even assuming for the sake of argument that the
ALJ erred in concluding that Ashby's mental impairments were
non-severe, it appears that error was harmless. Even Dr. Smith
did not find Ashby's mental impairments to be marked or extreme.
And the ALJ considered the limiting effects of Ashby's mental

22

impairments when formulating Ashby's RFC.  See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) ("At step two, the ALJ identified other 'severe impairments,' . . . and therefore proceeded with the subsequent steps.  And, in those subsequent steps, the ALJ specifically considered her anxiety and panic attacks.  Because these conditions were considered during the subsequent steps, any error was harmless." (internal citations omitted)); Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012) ("But even if there were a mistake at Step 2, it does not matter.  Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment.  Here, the ALJ categorized two impairments as severe, and so any error of omission was harmless."); Carpenter v. Astrue, 537 F.3d 1264, 1265-66 (10th Cir. 2008) ("Nevertheless, any error [at step two] became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that

claimant's cervical condition constituted a severe impairment could not constitute reversible error."); Lewis v. Astrue, 937 F. Supp. 2d 809, 819 (S.D. W. Va. 2013) ([T]he ALJ's exclusion of Claimant's bipolar disorder, panic attacks, and personality disorder as severe impairments at step two is harmless error. Contrary to the Claimant's argument, the ALJ acknowledged these impairments and their limitations in discussing the treatment notes in formulating her RFC.").

As the magistrate judge noted, the ALJ's RFC discussion specifically considered the reports of Dr. Dunn and Dr. Smith (as well as Dr. Bartee's affirmance), crediting them to some extent and discounting them where he found their conclusions inconsistent with the record evidence.  See R. at 19-20.  Indeed, the ALJ observed that Dr. Dunn assigned Ashby a GAF score reflecting only mild symptoms and noted Dr. Smith's opinion (affirmed by Dr. Bartee) that Ashby "retained the ability to learn and perform simple, unskilled work-like activities in an environment that involved limited contact with others."  R. at 20.  He ultimately concluded that the entire record suggested Ashby's "mental health conditions [were] well controlled with medication[.]"  R. at 20-21.  Thus, given that the ALJ went on to consider Ashby's mental limitations at steps four and five of the sequential evaluation, any error in failing

24

to categorize Ashby's mental impairments as severe at step two
was harmless.

## IV. Conclusion

A close reading of the decision in this case reveals
that the ALJ believed Ashby's grip was impaired to some extent,
and credited Ashby's complaints of knee pain and back pain.  The
ALJ did not, however, find Ashby's description of the limiting
effects of those conditions credible, and concluded that Ashby
was not disabled because he retained the RFC to work.  As
discussed above, that decision is supported by substantial
evidence in the record, including treatment notes and reports of
Ashby's activities.  The fact that the ALJ did not conduct an
explicit function-by-function assessment of Ashby's physical
abilities does not undermine that conclusion in this case,
because the ALJ's decision provides a sufficient basis to
determine on review that the relevant functions were indeed
analyzed.  And the ALJ's decision not to categorize Ashby's
mental impairments as "severe" provides no basis for remand,
because the ALJ considered the limiting effects of Ashby's
mental impairments in arriving at his RFC determination.

Accordingly, having received the PF&R and the plaintiff's objections, and having reviewed the record *de novo*, it is ORDERED:

1.    That the PF&R be, and it hereby is, adopted and incorporated herein;

2.    That the Commissioner's final decision be, and it hereby is, affirmed;

3.    That judgment be, and it hereby is, granted in favor of the Commissioner; and

4.    That this civil action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.

DATED: March 31, 2015

John T. Copenhaver, Jr.
United States District Judge